UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOSEPH LEE, | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1832(RC) |
| v. | : | Re Document No.: | 83 |
| DISTRICT OF COLUMBIA, | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL

### I. INTRODUCTION

Plaintiff, Joseph Lee, brought an action pursuant to the Americans with Disabilities Act, 42 U.S.C §12101 ("ADA"), alleging that the District of Columbia denied his request for a reasonable accommodation to manage his diabetes, and intentionally discriminated against him by terminating his employment because of his disability. Plaintiff maintains that he is protected under the ADA because his Type II diabetes substantially limits his ability to eat, therefore qualifying as a "disability" within the meaning of the Act. At trial, the jury returned a special verdict, finding that Mr. Lee was not disabled within the meaning of the Act. Plaintiff now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). Specifically he argues: 1) that the jury's verdict is against the weight of the evidence presented at trial, and 2) that the Court gave the jury an improper jury instruction on the definition of the term "substantially limiting."

## II. FACTUAL BACKGROUND

In 2008, Joseph Lee, a corrections officer assigned to guard inmates receiving treatment at Howard University Hospital, was fired by the District of Columbia Department of Corrections. The stated reason was neglect of duty. Brown Termination Letter, 1, Trial Ex. 3, June 26, 2008. At that time, Joseph Lee had Type II diabetes. Tr. Test. of Dr. John Lee, 21-22, Pl.'s Mot. New Trial, Ex. 1, ECF No. 83, Aug. 12, 2013. He took oral medication to manage his condition, was required to eat healthy meals on a regular schedule, and exercise. *Id* at 28. If Mr. Lee did not properly manage his diabetes, he could become dizzy and faint or fall asleep. Tr. Test. Ms. Tonya Lee, 8, Pl's. Mot. New Trial, Ex. 3. Mr. Lee alleges that he told several superiors within the Department of Corrections about his diabetes, including Kenneth Graham and Yvonne Perry. Tr. Test. Mr. Joseph Lee, 12-13, July 18, 2013, ECF No. 92.[1]

In March 2008, Mr. Lee was assigned to work an overnight shift at Howard University Hospital. He went on duty at 11:30 p.m. and completed his shift at 8:00 a.m. According to the recollection of his supervisors, he was found asleep on the job three times in a little more than two weeks. Perry Dep. Designation, 80-81, 83, Tr. Trial R. July 17, 2013, ECF No. 93. Mr. Lee denies that he was ever asleep on the job.

Mr. Lee did not receive a lunch break on March 27, 2008, Test. of Mr. Lee, 15, as Ms. Perry admits could sometimes happen. Perry Dep. Designation, 110-11. As Mr. Lee recalls, he called Mr. Graham on March 27, telling him that he desperately needed a lunch break. Tr. Test. Mr. Joseph Lee, 15. No relief ever arrived. *Id.* A little after 3:00 a.m., someone from the hospital called to report that Mr. Lee was sleeping on the job. As Ms. Perry recalls, Mr. Graham took the

---

[1] The Court notes that following Mr. Lee's termination, he suffered a stroke, affecting his memory and his speech. Test. of Mr. Lee, 10. As a result, Mr. Lee was clearly impaired at trial. He sometimes had difficulty responding to questions and often his answers were inconsistent. Accordingly, a reasonable jury could discount his testimony.

2

call and ordered her to go to the hospital and find out what was going on. Perry Dep. Designation, 115-16. On Ms. Perry's account, she entered the room where Mr. Lee was stationed and shook Mr. Lee, who awoke briefly and then went back to sleep. Perry Dep. Designation, 117. She left the room and called Mr. Graham, who said that relief was on the way. Perry Dep. Designation, 119. She wrote a report of the incident, which, along with the incidents earlier that month, became the stated reason that Mr. Lee was fired. Perry Dep. Designation, 122-3. Ms. Perry's account of that evening is contradicted by Mr. Lee, who denies he was ever asleep. Tr. Test. of Joseph Lee, 65.

Mr. Lee was placed on administrative leave, and then fired for neglect of duty. Brown Termination Letter at 1. After exhausting his administrative remedies, Mr. Lee filed this suit, alleging that the Department had failed to reasonably accommodate his diabetes, and had fired him because he was a diabetic.

This Court held a jury trial between July 15 and 19, 2013. At trial, Dr. John J. Lee, the Plaintiff's former treating physician, and the Plaintiff himself testified that diabetes burdens his ability to eat. Test. of Dr. John Lee, 35; Test. of Mr. Lee, 41-44. Dr. Lee testified that he works for Kaiser Permanente and was Plaintiff's treating physician for approximately six to eight years, until March 2013. During that time, Plaintiff had Type II diabetes. Dr. Lee instructed Plaintiff to follow a meal plan to manage his diabetes, along with exercising and taking an oral medication. Test. Dr. John Lee, 35. Plaintiff was required to eat three meals a day with a snack. *Id*. Each meal had to be "spread about five to six hours apart." *Id.* at 28. Plaintiff also had to wait two hours after eating a meal to have a snack. *Id*.

At trial, Plaintiff testified that he maintained a sleeping and eating schedule when assigned to work shift number one at the hospital. Tr. Test. of Joseph Lee, 41-44. The schedule

followed as thus: Plaintiff began his shift at 11:30 p.m. and ended his shift at 8:00 a.m. After getting off of work, Plaintiff went home and ate a meal. *Id.* He then slept. Plaintiff woke up around midday, and ate a meal around 12:00 or 1:00 p.m., around regular lunch time. *Id.* He then slept again. Plaintiff would eat another meal around 8:00 or 9:00 p.m., before leaving for work. *Id.* Plaintiff would take his pills with his first meal at 8:00 a.m. and his third meal at 9:00 p.m. *Id.* According to Plaintiff's testimony, he ate all three meals required by his diet plan outside of his shift hours.

> At trial, this Court instructed the jury, in part, that:
>
> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

Tr. of Jury Trial/ Jury Deliberations, 29, Sept. 13, 2013, ECF No. 89. Plaintiff objected to this portion of the instruction, arguing that the language would confuse the jury as no evidence existed in the record to support the instruction. Tr. of Trial R., July 18, 2013. The jury returned a verdict in favor of the District of Columbia, finding that Plaintiff did not have a disability within the meaning of the ADA. Jury Verdict Form, ECF No. 74, July 19, 2013. Plaintiff now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). Specifically, he argues: 1) that the jury's verdict is against the weight of the evidence presented at trial, and 2) that the Court provided the jury an improper jury instruction on the definition of the term "substantially limiting."

4

## III. ANALYSIS

### A. Legal Standard to Grant a New Trial

Under Federal Rule of Civil Procedure 59, the court may grant a motion for a new trial on all or some of the issues after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). Such reasons exist (1) where the verdict is against the weight of the evidence, *Gasperini v. Ctr. for Humanities,* 518 U.S. 415, 433 (1996), or (2) where "the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." *Nyman v. Fed. Deposit Ins. Corp.,* 967 F.Supp. 1562, 1569 (D.D.C. 1997). A new trial "should be granted only where the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice." *Martinez v. Dist. of Columbia,* 503 F.Supp.2d 353, 355 (D.D.C. 2007) (quoting *Nyman,* 967 F.Supp. at 1569); *see also In re Lorazepam & Clorazepate Antitrust Litig.,* 467 F.Supp.2d 74, 87 (D.D.C. 2006) ( "Generally, a new trial may only be granted when a manifest error of law or fact is presented."). The standard for granting a new trial is not whether minor evidentiary errors were made but whether there was a clear miscarriage of justice. *Nyman,* 967 F.Supp. at 1569. The decision whether to grant a new trial falls within the discretion of the trial court. *McNeal v. Hi–Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 646 (D.C. Cir. 1988).

### B. The Jury Verdict was Not Against the Weight of the Evidence

Mr. Lee argues that the jury verdict, which found that Mr. Lee was not disabled within the meaning of the ADA, was against the weight of the evidence and thus necessitates a new trial. To determine whether Mr. Lee is correct, this Court must analyze the relevant elements of an ADA action and the evidence presented at trial while "assessing the credibility of the

witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011); *Byrd v. Blue Ridge Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses…"). A new trial is appropriate if, after evaluating the evidence and its relative strength, the district court believes that the jury verdict is against the manifest weight of the evidence.

To recover under the ADA, Mr. Lee must prove that he was discriminated against on the basis of his disability. 42 U.S.C §12112(a). Plaintiff has the burden of establishing that: 1) he has a "disability," 2) he is "qualified" for the job, and 3) an adverse employment decision was made solely because of his disability. *Weigert v. Georgetown Univ.*, 120 F.Supp.2d 1, 6 (D.C. Cir. 2000). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual." 42 U.S.C. §12102(2). The parties do not dispute that the Plaintiff has an impairment. Plaintiff also alleges, and this Court accepts, that Plaintiff's diabetes affects a major life activity – eating. *See Kapche v. Holder*, 677 F.3d 454 (D.C. Cir. 2012) (accepting without explicitly holding that eating is a major life activity).

Plaintiff must still prove, however, that his diabetes "substantially limits" his eating. As the Supreme Court recognized in *Sutton v. United Air Lines, Inc.*, there is no *per se* rule automatically qualifying certain impairments as "disabilities" under the ADA. 527 U.S. 471, 483 (1999); 29 C.F.R. pt. 1630, App. §1630.2 (j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). Instead, the severity of the impairment must be determined on a case by case basis. *Sutton*, 527 U.S. at 483.

The factors to consider in determining whether an impairment substantially limits a major life activity include 1) the nature and severity of the impairment, 2) the duration of the impairment and 3) the long term impact of the impairment. *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996). Courts must also consider measures taken by the individual to mitigate the effects of the impairment. *Sutton*, 527 U.S. at 483. As *Sutton* explains, in assessing whether an impairment is a substantial limitation, courts must take into consideration the effectiveness, side effects and burdens of the plaintiff's mitigating measures. *Sutton*, 527 U.S. 482-4.

At trial, Mr. Lee established that he was required to follow a prescribed meal plan where he had to eat three meals a day with a snack to manage his diabetes. Each of his three meals had to be "spread about five to six hours apart." Test. of Dr. John Lee, 28. Mr. Lee was required to eat a "basic, well-balanced meal without an overly weighted…focus on carbohydrates and simple sugars" Test. of Dr. John Lee, 35. If Mr. Lee strayed from this meal schedule, he would begin to feel tired, dizzy and "sometimes he would often fall." Test. of Tonya Lee, 8. There was no evidence at trial however that Mr. Lee had to check his glucose levels, administer insulin shots throughout the day, or otherwise keep a careful watch over the amount of insulin ingested, as some diabetics must do.

Mr. Lee argues that this evidence not only establishes that he has diabetes, but that his diabetes is severe enough to qualify as a disability within the definition of the ADA. He further argues that the District offered no evidence at trial to contest that Plaintiff's diabetes substantially limited the major life activity of eating. Pl.'s Mot. for New. Trial at 10. Although the District presented evidence of Mr. Lee's grogginess on the morning of March 27, 2008, Mr. Lee argues that this evidence, even if taken as true, is consistent with his testimony that a deviation from the meal schedule results in dire bodily reactions. Pl.'s Mot. for New Trial at 10.

7

As a result, Plaintiff argues that "[t]he District failed entirely to present any evidence that Plaintiff does not have a disability within the meaning of the ADA." *Id.*

Even if the District's evidence of grogginess is consistent with Mr. Lee's testimony, that in itself is insufficient proof that the jury's verdict was against the weight of the evidence.[2] After all, it is the Plaintiff, not the Defendant, who must "establish[ ] that he is disabled under the ADA…that he has an impairment which *is severe enough to rise to the level of a disability* that substantially limits one or more major life activities." *Ingles v. Neiman Marcus Group*, 974 F.Supp. 996, 1001 (S.D. Tx. 1997) (emphasis added).

In support of his argument, Plaintiff relies heavily on Dr. Lee's testimony. Although Dr. Lee's testimony establishes Plaintiff's dietary regimen, most of Dr. Lee's testimony is merely a generalized discussion of the physical symptoms associated with diabetes. *See generally* Test. of Dr. Lee. For example, when discussing physical symptoms associated with low blood sugar, Dr. Lee testified that doctors "often hear of dizziness, the sweats, the shakes. *Some people*…can pass out." Test. of Dr. Lee, 23 (emphasis added). Dr. Lee himself never testified of the specific symptoms Plaintiff experienced when he missed a snack. A reasonable jury could conclude that that although some people suffer these symptoms, there was no evidence plaintiff did so if he simply missed a snack.

---

[2] For example, a reasonable jury could conclude that Plaintiff actually fell asleep on the nights in question. Mr. Lee was accused of sleeping on the job on more than one occasion. *See generally*, Perry Dep. Designation, 80-81, 83, Tr. Trial R. July 17, 2013, ECF No. 93. However, according to Plaintiff's own testimony, he generally received a lunch break. Tr. Test. of Joseph Lee, 14. The only night he was not relieved was on March 27, 2008. *Id.* On this logic, a reasonable jury could conclude that Plaintiff's grogginess and his falling asleep had nothing whatsoever to do with his diabetes or a lack of a snack. A reasonable jury could conclude that Plaintiff fell asleep on this night, as he had on previous nights where he received his snack, because it was the middle of the night and he was inattentive to his duties.

Similarly, Ms. Tonya Lee's testimony about Plaintiff's diabetic symptoms did not specify how many meals Plaintiff would have to miss in order to trigger a diabetic reaction. It was established at trial that Plaintiff regularly eats all three meals outside of work hours, and that Plaintiff did in fact eat his dinner at home before coming to work that night. Tr. Test. of Joseph Lee, 41-44. Would Plaintiff feel tired, as Ms. Lee testified to, if he merely missed his snack instead of a full meal? Ms. Lee's general testimony of Mr. Lee's diabetic symptoms does not address any of this nuance. Thus a reasonable jury could discount her generalizations.

Since *Sutton*, several courts have had the opportunity to determine under what conditions diabetes may be considered a disability for purposes of the ADA. And by all accounts, whether diabetes will be considered a disability is a "matter of degree." *Kapche v. Holder*, 677 F.3d 454, 561 (D.C. Cir. 2012); *Sepulveda v. Glickman*, 167 F.Supp.2d 186, 190 (D.Pr. 2001). Courts that have found diabetes to substantially limit an individual's eating have focused on the severity of the diabetic symptoms and the difficulty of the mitigating measures. For example, in *Kapche*, the Court explained that the plaintiff had to take insulin "every time he eats," "check[ ] his blood sugar level three to five times daily using a finger prick," and had to "calculate the amount of carbohydrates he is about to ingest and adjust his insulin levels accordingly." 677 F.3d at 462. The Court concluded that Mr. Kapches's "treatment regimen is a constant battle every day." *Id.*

The plaintiff in *Fraser v. Goodale*, similarly suffered a severe form of diabetes. 342 F.3d 1032 (9th Cir. 2003). Ms. Fraser lived with "brittle" diabetes which caused her blood sugar to swing from high to low fairly rapidly. *Id.* at 1035. As a result, she required four or more blood tests daily and multiple daily injections of insulin or glucagon. *Id.* Her insulin levels had to be adjusted based on her day's activities, her blood pressure, and her kidney function, thus requiring

a careful daily log on her day's diet and activities. *Id.* In these cases, the plaintiffs had severe diabetic symptoms and a correspondingly onerous treatment regimen.

On the other hand, courts have regularly found symptoms such as Mr. Lee's to be at the lower end of the diabetes spectrum, and have thus found no "disability" under the ADA. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222-4 (5th Cir. 2011) (finding no disability under the ADA when only modest adjustments to an individual's diet are necessary, such as portion control and a once-daily insulin shot); *Schultz v. Potter*, 142 Fed.Appx. 598, 599 (3d Cir. 2005) (diabetes not substantially limiting because the condition "merely requires [the diabetic] to watch what she eats more carefully, have a snack if her blood sugar is low, and take insulin if it becomes too high); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1156 (11th Cir. 2005) (no substantial limitation on eating based on plaintiff's testimony that "with proper self-monitoring, [he is] in no way limited by [his] diabetes in what [he] do[es] during the day or how [he] does it").

Mr. Lee presented no evidence of needing to test his blood sugar levels daily or to calibrate his meals to such tests results, as Mr. Kapche and Ms. Fraser had to do. Indeed, Ms. Tonya Lee testified that as long as Mr. Lee ate his regularly scheduled meals, his diabetic symptoms were under control. Test. of Tonya Lee, 20. Because Mr. Lee's routine involved eating all three of his meals outside of work, he only needed to eat a snack at some point during work hours in order to comply with his prescribed meal regimen. Tr. of Joseph Lee Test., 41-44. And Mr. Lee's own testimony indicated that he generally brought a snack with him to work. Tr. of Joseph Lee Test., 17,70. On the night of March 27, 2008, he forgot a snack in his rush to get to work. Tr. of Joseph Lee Test., 17. Additional testimony also established that Mr. Lee was able

to eat a snack at the hospital during his bathroom breaks regardless of whether he was relieved of his duties. Tr. of Warren Hairston Test., 56, July 16, 2013.[3]

The jury was presented with this information and found that neither Mr. Lee's diabetes, nor his mitigating meal regimen, were sufficiently severe to be a substantial limitation on his major life activity of eating. After assessing the credibility of the witnesses and the comparative strength of the evidence put on at trial, this Court finds that Mr. Lee's diabetes is not as debilitating as Mr. Kapche's or Ms. Fraser's, and that the jury verdict is thus not against the weight of the evidence at trial.

### C. This Court's Jury Instruction on the Definition of the Term "Substantially Limiting" was Not Improper.

Plaintiff next argues that this Court's jury instruction on the definition of the term "substantially limiting" was improper and prejudiced the Plaintiff at trial. At trial, this Court instructed the jury, in pertinent part:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

Tr. of Jury Trial/ Jury Deliberations, 29, Sept. 13, 2013, ECF No. 89. Although Plaintiff never challenged the substance of this instruction, he argued that this portion of the instruction would confuse the jury, as no evidence existed in the record to support the instruction. Tr. of Trial R.,

---

[3] At trial, Plaintiff also testified that he stopped at a vending machine to buy a bag of potato chips on his way to his next assignment at the jail. Tr. of Joseph Lee Test., 57, 60. Although this issue was not further explored at trial, a reasonable jury, relying upon its life experience, could infer that a large institution like Howard University Hospital, that operates 24 hours a day, would have vending machines or other outlets at which one could obtain a snack.

11

July 18, 2013. At trial, this Court overruled Plaintiff's objection to this proposed jury instruction. *Id.* Plaintiff now renews his objection. He argues that the jury instruction "presupposed that there was some evidence in the record sufficient for the jury" to conclude that "Plaintiff's eating was not substantially limited due to mitigating measures." Pl.'s Mot. for New Trial, 11. Mr. Lee believes "this theory was not supported by any evidence in the record." *Id.*

But as set forth above, Plaintiff's own witnesses testified that when Mr. Lee followed his prescribed meal schedule, his diabetes was under control. Test. of Dr. Lee., 28, 35 (stating that as long as Mr. Lee took his medication and ate a well-balanced meal according to his schedule, he could manage his diabetes); Test. of Tonya Lee, 20 (testifying that Mr. Lee functioned normally as long as he maintained his meal plan). Oral medication and a meal plan are mitigating measures taken by the Plaintiff to control and manage his diabetes. And as explained in the previous section, *Sutton* requires the fact finder to weigh the success and burdens of these mitigating measures when determining whether a Plaintiff is "disabled" under the ADA. *Sutton*, 527 U.S. at 483. Mr. Lee had his three meals outside of work and could bring a snack to eat during his shift. Test. of Mr. Lee, 17, 41-44, 70. As such, Plaintiff himself introduced evidence of the mitigating measures that provides an appropriate basis for the jury instruction.

Plaintiff also argues that this Court already ruled that the "substantially limiting" jury instruction was improper when denying the District's Motion for Summary Judgment. Mem. Opp. denying Def.'s Mot. for Summ. J., 10, ECF No. 27, Feb. 1, 2013. In denying the District's motion, the Court found that:

> The District's argument boils down to this: because Mr. Lee could manage his diabetes by eating meals at regular times, he was not disabled with the meaning of the ADA, and because he was not disabled within the meaning of the ADA, that statute did not require that the District allow him to eat meals at regular times. The argument almost refutes itself. …. *Mr. Lee needed regular meals to control his disease; without them, he had trouble staying alert.* The fact that this

12

> substantial limitation "'might,' 'could,' or 'would'" have been obviated "if mitigating measures were . . . taken" *does not mean that the District had no obligation to allow Mr. Lee to take those measures, and it does not change the fact that, when he missed meals, Cpl. Lee was "presently . . . substantially limited" by his diabetes.* A reasonable jury could therefore find that Mr. Lee was disabled within the meaning of the Americans with Disabilities Act.

*Id*. While this was true at the summary judgment stage based on the record present at the time, the District presented new evidence at trial establishing that although Mr. Lee needed regular meals to control his diabetes, his established meal plan did not require him to eat any meals during his shift. Test. of Joseph Lee, 41-44. During his shift, Mr. Lee only required a snack. The testimony presented at trial (and previously absent from the summary judgment briefing) established that he was able to have such a snack. Test. of Mr. Lee, 17, 70. This Court's ruling on the District's Motion for Summary Judgment, based on the record present then, does not bind it, or the jury, to conclude that Mr. Lee was "disabled" within the meaning of the ADA once more refined evidence was presented at trial.

Because Mr. Lee himself presented evidence of his mitigating measures, and because the District presented new evidence at trial of Mr. Lee's ability to maintain his prescribed meal regimen, this Court does not find that the jury instruction on the definition of "substantially limiting" was improper.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial is DENIED. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 20, 2014                                         RUDOLPH CONTRERAS
                                                                  United States District Judge